❏ Original

CLERK'S OFFICE
A TRUE COPY
Feb 10, 2023
s/ D. Olszewski
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

# UNITED STATES DISTRICT COURT
for the

_____ District of _____

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )   Case No.
)
)
)

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:      Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the _____ District of _____
*(identify the person or describe the property to be searched and give its location)*:

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

**YOU ARE COMMANDED** to execute this warrant on or before _____ *(not to exceed 14 days)*
❏ in the daytime 6:00 a.m. to 10:00 p.m.   ❏ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to _____ .
*(United States Magistrate Judge)*

❏ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*

❏ for _____ days *(not to exceed 30)*   ❏ until, the facts justifying, the later specific date of _____ .

Date and time issued: _____          *William E. Duffin*

_____
*Judge's signature*

City and state: _____          _____
*Printed name and title*

## Return

| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |
|---|---|---|
| | | |

Inventory made in the presence of :

Inventory of the property taken and name(s) of any person(s) seized:

## Certification

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.


Date:  _____

_____
*Executing officer's signature*

_____
*Printed name and title*

**ATTACHMENT A**

**Property to Be Searched**

This warrant applies to records and information associated with the cellular telephone assigned call number **(414) 242-1743,** WITH INTERNATIONAL MOBILE SUBSCRIBER IDENTITY / ELECTRONIC SERIAL NUMBER 310410285629749 ("the Account"), that are stored at premises controlled by **AT&T** ("the Provider"), headquartered at **11760 U.S Highway 1, North palm Beach, FL 33408.**

# ATTACHMENT B

## Particular Things to be Seized

## I.    Information to be Disclosed by the Provider

To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, including any information that has been deleted but is still available to the Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Provider is required to disclose to the government the following information pertaining to the Account listed in Attachment A for the time period **March 20, 2021, to September 30, 2021.**

a.   The following information about the customers or subscribers of the Account:

   i.   Names (including subscriber names, user names, and screen names);

   ii.   Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

   iii.   Local and long distance telephone connection records;

   iv.   Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

   v.   Length of service (including start date) and types of service utilized;

   vi.   Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

   vii.   Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address); and

   viii.   Means and source of payment for such service (including any credit card or bank account number) and billing records.

2

b. All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the Account, including:

   i. the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses); and

   ii. information regarding the cell tower and antenna face (also known as "sectors") through which the communications were sent and received.

## II. Information to be Seized by the Government

All information described above in Section I that constitutes evidence of violations of Title 18, United States Code, Sections 922(g)(1) (felon in possession of a firearm); 922(d)(1) (providing a firearm to a felon), and 924(a)(6) (straw purchase of a firearm) involving SMART and others during the period of March 20, 2021, to September 30, 2021.

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Provider in order to locate the things particularly described in this Warrant.

3

AO 106A (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means



CLERK'S OFFICE
A TRUE COPY
Feb 10, 2023
s/ D. Olszewski
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

In the Matter of the Search of                              )
*(Briefly describe the property to be searched*            )
*or identify the person by name and address)*              )     Case No.    23    MJ    21
NFORMATION ASSOCIATED WITH THE CELLULAR DEVICE ASSIGNED CALL )
NUMBER (414) 242-1743, WITH INTERNATIONAL MOBILE SUBSCRIBER  )
IDENTITY/ELECTRONIC SERIAL NUMBER 310410285629749 ("THE SUBJECT )
PHONE"), THAT IS STORED AT PREMISES CONTROLLED BY AT&T      )

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

Please see Attachment A.

located in the _____Eastern_____ District of _____Wisconsin_____ , there is now concealed *(identify the person or describe the property to be seized)*:

Please see Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ☑ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
| --- | --- |
| 18 U.S.C. 922(g)(1) | Felon in Possession of a Firearm |
| 18 U.S.C. 922(d)(1) | Providing a Firearm to a Felon |
| 18 U.S.C. 924(a)(6) | Straw Purchase of a Firearm |

The application is based on these facts:

Please see attached Affidavit.

- ☑ Continued on the attached sheet.
- ☑ Delayed notice of __30__ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

MATTHEW ERNST   Digitally signed by MATTHEW ERNST
Date: 2023.02.09 14:46:37 -06'00'

*Applicant's signature*

Special Agent Matthew Ernst, ATF

*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
_____phone_____ *(specify reliable electronic means)*.

Date: ____2/10/2023____

*Judge's signature*

City and state:  Milwaukee, WI

Honorable William E. Duffin, U.S. Magistrate Judge

*Printed name and title*

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, Matthew Ernst, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application for a search warrant for information associated with a certain cellular telephone assigned call number **(414) 242-1743**, with International Mobile Subscriber Identity/Electronic Serial Number **310410285629749** ("the SUBJECT PHONE"), that is stored at premises controlled by **AT&T**, a wireless telephone service provider headquartered at **11760 U.S Highway 1, North palm Beach, FL 33408**.  The information to be searched is described in the following paragraphs and in Attachment A.  This affidavit is made in support of an application for a search warrant under 18 U.S.C. § 2703(c)(1)(A) to require **AT&T** to disclose to the government copies of the information further described in Section I of Attachment B.  Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review the information to locate items described in Section II of Attachment B.

2.      I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives (hereinafter "ATF"). As such, I am "an investigator or officer charged by the Attorney General with the duty of enforcing any of the criminal, seizure, or forfeiture provisions of the laws of the United States," within the meaning of Section 3051(a) of Title 18, United States Code; that is, an officer of the United States who is empowered by law to conduct investigations of, execute warrants and to make arrests for offenses against the United States and offenses enumerated in United States Code Title 18 and Title 21. I have been employed with the ATF since January 2015, and am currently assigned to the Milwaukee Field Office, under the Chicago Field Division. I completed Criminal Investigative Training and Special Agent Basic Training at the Federal Law Enforcement Training Center. I have received training on in connection with, and conducted

investigations of violations of the National Firearms Act, Gun Control Act, and Title 18, United States Code, Sections 922(g), 924(c), and others. I have also received training and conducted investigations involving illicit drugs and the distribution of illicit drugs in violation of Title 21, United States Code, Sections 841, 843, 846 and others.

3.      The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4.      Based on the facts set forth in this affidavit, there is probable cause to believe that violations of Title 18, United States Code, Sections 922(g)(1) (felon in possession of a firearm); 922(d)(1) (providing a firearm to a felon), and 924(a)(6) (straw purchase of a firearm), have been committed, are being committed, and will be committed by Orlando SMART ("SMART") and other persons.  There is also probable cause to search the information described in Attachment A for evidence of these crimes as further described in Attachment B.

## PROBABLE CAUSE

5.      In May of 2022, ATF initiated an investigation into Orlando SMART ("SMART"), and others known and unknown, for their involvement in National Integrated Ballistics Information Network[1] ("NIBIN") Lead # 7496. SMART was found to be the original purchaser of a Glock, Model 30, .45 caliber pistol bearing serial number BTAC173, which was recovered by law enforcement and was correlated to a shooting incident and a homicide that occurred in the City of Milwaukee, WI.

---

[1] NIBIN compares images of submitted ballistic evidence from shooting scenes and recovered firearms and produces a list of possible similar results. Trained NIBIN technicians then conduct a correlation review of these results, identifying NIBIN leads or potential links or associations from the same firearm. A NIBIN lead is an unconfirmed, potential association between two (2) or more pieces of firearm ballistic evidence and is based on a correlation review of the digital images in the NIBIN database.

2

6.      NIBIN Lead #7469 correlated three (3) incidents that occurred between June 12, 2021 to April 5, 2022. The incidents correlated, including a homicide, an endangering safety by use of a dangerous weapon incident, and the recovery of the **Glock, Model 30, .45 caliber pistol bearing serial number BTAC173**, which was located in a vacant residence that had three (3) individuals inside, two (2) of which were convicted felons, along with marijuana, cocaine and heroin. A trace of the above-detailed Glock pistol through eTrace resulted in law enforcement learning, SMART purchased the firearm on April 7, 2021, and the Time to Crime for the firearm was 363 days.

7.      It is important to note, based on the Glock pistol being correlated through NIBIN to a homicide that occurred on June 12, 2021, the adjusted Time to Crime for the firearm is approximately 66 days. Furthermore, SMART'S residence, located at 4736 N. 36th Street, Milwaukee, WI, is located immediately to the north of 4732 N. 36th Street, Milwaukee, WI, which is one of the last locations the homicide victim was seen before he was killed, and in the area where his body was located.

8.      On or about June 8, 2022, I reviewed copies of the firearms transfer paperwork associated with the above-listed Glock pistol SMART purchased on April 7, 2021, from The Shooters Shop, Inc. The following is a synopsis of the information contained in those document(s):

      a.   On March 22, 2021, SMART initiated the purchase of a **Glock, Model 30, .45 caliber pistol bearing serial number BTAC173** from The Shooters Supply Inc,. SMART provided his address as 4736 N. 36th Street, Milwaukee, WI and his telephone number as **414-242-1743** ("the Subject Phone"). On April 7, 2021, the transfer of the firearm was completed, and SMART received the firearm.

3

b. Under question 21.a., which asks, "Are you the actual transferee/buyer of the firearm(s) listed on this form and any continuation sheet(s) (ATF Form 5300.9A)? **Warning: You are not the actual transferee/buyer if you are acquiring the firearm(s) on behalf of another person. If you are not the actual transferee/buyer, the licensee cannot transfer the firearm(s) to you.**", SMART checked "Yes".

c. Under question 21.e., which asks, "Are you an unlawful user of, or addicted to, marijuana or any depressant, stimulant, narcotic drug, or any other controlled substance? **Warning:** The use or possession of marijuana remains unlawful under Federal law regardless of whether it has been legalized or decriminalized for medicinal or recreational purposes in the state where you reside.", SMART checked "No".

d. Under Section D question 30 and 31, which must be completed personally by the transferee/buyer if the transfer of the firearm(s) occurs on a different day from the date the transferee/buyer signed originally, SMART again signed and dated. By signing here, SMART certified that all of his responses that were originally made on the form were still true, correct, and complete.

9. Through the course of this investigation, your affiant reviewed historical toll-records from Sprint/T-Mobile for telephone number 414-865-0644 which belonged to Bianca BUFORD ("BUFORD"), who was the homicide victim's former romantic partner, at the time of the June 12, 2021 homicide. Your affiant began to try and identify subscribers for several of BUFORD'S top contacted telephone numbers by querying them through law enforcement databases. While trying to identify telephone number 414-460-7710, which was the number one (1) telephone number BUFORD was in contact with, your affiant queried the number through the

4

Milwaukee County Jail call system and found that Samuel WHITE ("WHITE") attempted to contact the number from jail on October 3, 2021. Your affiant then queried telephone number 414-265-9897, which was the number two (2) telephone number BUFORD was in contact with, through law enforcement databases and found that number to be associated with WHITE.

10.     It is important to note, while reviewing jail calls made by WHITE, your affiant identified WHITE contacted BUFORD, at a different telephone number from the one listed above in paragraph 10.  Through calls listened to by the affiant, it became clear WHITE and BUFORD were involved in a romantic relationship. Furthermore, your affiant is aware that the Milwaukee Police Department ("MPD") Homicide Unit received tip(s) during their homicide investigation in which they were informed BUFORD'S boyfriend was involved in the homicide.

11.     Your affiant conducted a driver's license query through the National Crime Information Center (NCIC) for WHITE. The query resulted in learning WHITE'S primary listed address is 4732 N. 36th Street, Milwaukee, WI. This is the same address BUFORD resides at and it is a residence directly to the south of SMART'S residence, which was one of the last locations the homicide victim was seen before he was killed.

12.     Your affiant also conducted a criminal history query through NCIC for WHITE and observed WHITE to have been a convicted felon since February of 2006. As a result of this felony conviction, WHITE is prohibited from possessing a firearm and ammunition.

13.     On or about August 1, 2022, I reviewed data associated to SMART'S Facebook account (Facebook User ID: 100010513653660/ Username "Lando Ballin"). The results were received from Facebook pursuant to a federal search warrant signed on by the Honorable United States Magistrate Judge William Duffin on June 14, 2022. Through its review, I did not observe any messages, images, or videos in relation to SMART purchasing or possessing the **Glock, Model 30, .45 caliber pistol bearing serial number BTAC173**. Your affiant knows from

5

training and experience, it is common for individuals and/or criminals to memorialize the procurement and possession of firearms; whether they were obtained through a legal or illegal market. Based on the lack of documentation of the Glock pistol on SMART'S Facebook account, I believe this further reflects that SMART was not the intended purchaser of the firearm and thus straw purchased the firearm for another individual.

14. On or about August 5, 2022, your affiant reviewed recorded calls made by WHITE while in custody at the Milwaukee County House of Corrections (HOC) from September 30, 2021, to May 2, 2022. The following is a summary of a couple of pertinent conversations made by WHITE that were reviewed by your affiant. The summarization of these recorded calls is not intended to serve as a verbatim transcription unless otherwise noted.

    a. On October 1, 2021, at approximately 1752hrs, WHITE placed a recorded call to BUFORD at telephone number 414-488-5882. The Milwaukee County Jail Call System lists the above telephone number to BUFORD at 4732 N. 46th Street, Milwaukee, WI. Furthermore, a query through law enforcement databases identified the telephone number to also belong to BUFORD. Between approximately minute 12:07 to 13:40 of the recorded call WHITE and BUFORD have the following pertinent conversation. BUFORD stated, "I was looking for that mail you had put up." WHITE states, "The what?" BUFORD again states the mail you put up. This back and forth goes on for a little until WHITE finally stated, "The gun? Say the shit!" BUFORD replied in the affirmative as that is what she was referring to. WHITE stated, "I told you its where you put the what's the name at on top of the cabinet right there. In the middle of the dining room."

    b. On October 1, 2021, at approximately 1813hrs, WHITE placed a recorded call to BUFORD at telephone number 414-488-5882. Between approximately minute

20:22 to 21:05 of the recorded call, WHITE and BUFORD have the following pertinent conversation. WHITE stated, "Like I said that little boy is up there, did you grab it yet?" BUFORD stated she has not. WHITE stated he needs to get off the phone and then further stated, "You know where that's at though?" BUFORD stated, "Yup, now I do." WHITE asked if BUFORD has it. BUFORD stated she's about to. WHITE stated, "Yeah, it's up there though. Where you put the 4-5 by." BUFORD replied, "Yup," and the two exchanged goodbyes and the call was terminated. Based upon training and experience, your affiant believes that when WHITE stated "4-5" he was referring to a .45 caliber firearm. Your affiant also knows through this investigation that a Glock, Model 30, .45 caliber pistol bearing serial number BTAC173 was utilized in the homicide that occurred on June 12, 2021, and believes WHITE was possibly referring to this firearm.

15.     On or about August 10, 2022, I reviewed historical toll-records from AT&T for the SUBJECT TELEPHONE, which belongs to SMART. The results were received from AT&T pursuant to a Federal Grand Jury subpoena, which SA Ernst had served on August 2, 2022 and subsequently received on August 9, 2022. Through the analysis of SMART'S toll records, I observed SMART and WHITE, utilizing telephone number 414-265-9897, to only be in contact with one another around the dates immediately surrounding the above-listed firearm was purchased. The two have no other contact before or after the purchase of the **Glock, Model 30, .45 caliber pistol bearing serial number BTAC173**. Based on training and experience, your affiant believes SMART straw purchased this firearm for WHITE.

16.     On or about September 2, 2022, I reviewed data associated to WHITE'S Facebook account (Facebook User ID: 100014825236609/ Yam White). The results were received from

Facebook pursuant to a federal search warrant signed on by the Honorable United States Magistrate Judge Nancy Joseph on August 16, 2022.

17.     In a status update made by WHITE on March 19, 2021, WHITE wrote the following: "I need a glock 40 like yesterday". It is important to note that this status update was made around the immediate time frame SMART initiated the purchase purchased the Glock, Model 30, .45 caliber pistol on March 22, 2021, and eventually took possession of on April 7, 2021. The following are replies posted in response to the above detailed status update:

> **Reese Benji (Facebook User ID: 100000148662692) comments: "**Betta ride wit yo blick"
>
> **WHITE replies:** "all the time my nig"
>
> **Reese Benji comments:** "no doubt stay dangerous"
>
> **WHITE replies:** "vice versus"
>
> **Latoyia McNeal (Facebook User ID: 100000367875924) comments:** "Go online to gunbroker.com and buy one for cheap"
>
> **Vee Lee (Facebook User ID: 100011366373190) comments:** "No you don't..trigger happy ass..Love you baby bro"

    a.  Your affiant knows from training and experience that "blick" is a common name for a firearm.

18.     I observed a pertinent Facebook messenger conversation WHITE had with an unknown individual utilizing Facebook User ID: 100008740597416. Their conversation, only containing several messages, started on or about February 4, 2021, and continued until on or about September 24, 2021. Specifically, on or about March 26, 2021, at approximately 1031hrs, WHITE messaged the unknown individual and stated, "45 shells bro", referring to .45 caliber ammunition. It is important to note this message occurred after SMART initiated the purchase for the Glock, Model 30, .45 caliber pistol.

19.     I also observed a pertinent Facebook messenger conversation that WHITE had with Facebook account "Kenny Mac" (Facebook User ID: 100012644671299). Their conversation

consisted of four (4) messages which all occurred on or about September 28, 2021. WHITE messaged "Kenny Mac" and stated, "U can get that 45". WHITE then attempted to call "Kenny Mac" but the call was not answered. "Kenny Mac" then called WHITE for a duration of 53 seconds. WHITE proceeded to message "Kenny Mac" and stated, "I'm bout to sell it to somebody else u Bs". In reference to this conversation, I believe WHITE was referring to selling the Glock, Model 30, .45 caliber pistol bearing serial number BTAC173. This conversation occurs approximately two (2) days prior to WHITE turning himself into jail and it would be likely for WHITE to sell the firearm in order to have money while he is in jail. Furthermore, due to the timeline WHITE would have maintained possession of the firearm since it was purchased, prior to the aforementioned June 12, 2021 homicide.

20.     While reviewing videos posted on the account, I observed a pertinent Facebook Live video WHITE posted on April 13, 2021, at approximately 0539hrs. The video is approximately thirty-nine (39) minutes and eleven (11) seconds in length and mostly shows WHITE driving around listening to music. The following are pertinent moments that occur in the Facebook Live video:

   a.   At approximately two (2) minutes and forty-seven (47) seconds into the video WHITE can be seen pointing a green laser beam at the camera from his waist area (*Figure 1*). SA Ernst believes the laser beam is attached to a firearm, but the firearm never comes into view.



*Figure 1*

b. At approximately sixteen (16) minutes and twenty-three (23) seconds into the video, WHITE'S cellular telephone falls down and you can see the right hip/groin area of WHITE. There appears to be a magazine to a firearm facing towards the center console of the vehicle (*Figure 2*). It is important to note, prior to this someone enters WHITE'S vehicle and an illegal narcotics sale occurs. Through this investigation I learned when SMART purchased the Glock, Model 30, .45 caliber pistol he also purchased a .45 caliber SGM pistol magazine. I believe the magazine observed in the video is consistent with a SGM .45 caliber Glock magazine (*Figure 3*). (*Due to WHITE utilizing the front facing camera on his cellular telephone the image is a mirror image.*)

10



*Figure 2*



*Figure 3*

c.   At approximately twenty-four (24) minutes and fifteen (15) seconds to twenty-four (24) minutes and thirty-five (35) seconds into the video WHITE conducts another illegal narcotics transaction inside of his vehicle.

d.   At approximately twenty-five (25) minutes and thirty-four (34) seconds into the video WHITE can be seen tying up a plastic corner baggie and brings it into the frame of the video. The baggie appears to contain a white substance believed to be cocaine (*Figure 4*).



*Figure 4*

21.   On or about October 26, 2022, case agents conducted a non-custodial interview of SMART in Milwaukee, WI. During the interview, case agents discussed with SMART the details surrounding his purchase of a Glock, Model 30, .45 caliber pistol bearing serial number

12

BTAC173. SMART stated he purchased the Glock pistol from "Shooter's Shop," but he could not recall when he purchased the firearm. SMART described the firearm to investigators as being a Glock Gen 4 .40 caliber pistol. Investigators inquired why SMART had previously stated he only purchased one firearm. SMART stated he does not really talk about the Glock pistol he purchased because it was stolen from him.

22.     SMART initially stated approximately two (2) to three (3) weeks after he purchased the Glock pistol, he was inside the gas station at intersection of 27th Street and Hampton Avenue, at the cash register, which was close to the front door, about to pay for his items when a masked individual came into the gas station and grabbed the Glock pistol off SMART'S person. SMART stated the unknown masked individual then fled from the store. SMART stated he called the Shooter's Shop, referring to the Federal Firearms Licensee (FFL) SMART purchased the Glock pistol from, to report the firearm as stolen but did not notify law enforcement. SMART stated he did not notify law enforcement because he did not know he needed to so.

23.     Investigators notified SMART that the Glock pistol he purchased was utilized in a homicide soon after SMART had purchased the firearm. Investigators stated the homicide occurred in the alleyway to the west of his residence and the homicide victim was at the house directly to the south of SMART'S, referring to BUFORD'S and WHITE'S residence, before he was murdered.

24.     SMART denied purchasing a firearm for anyone else and even highlighted how on the Firearms Transfer Form, referring to the ATF Form 4473, it states you cannot purchase a firearm on behalf of another individual. It is important to note, SMART became visibly upset when being accused of straw purchasing the Glock pistol. In regard to the homicide, SMART stated he did not know anything about a homicide or anyone being murdered in his neighborhood; which, SMART would maintain for the entirety of the interview. SMART further stated he did not

13

know the neighbors who lived to the south of his residence but did mention a woman who drives a BMW.

25.     Investigators continued to confront SMART with facts learned through this investigation, i.e., toll analysis, social warrants, etc., but SMART maintained the firearm was stolen off his person at the gas station and he did not straw purchase the firearm for anyone. During this line of questioning, SMART asked investigators for the name of the individual they believed committed the homicide. Investigators told SMART they were not going to divulge that information due to the fact investigators did not believe he was being truthful based on the evidence investigators have received and/or developed thus far.

26.     SMART eventually stated his originally story about the firearm being stolen off his person at the gas station was a lie and that SMART purchased the Glock pistol for WHITE. SMART referred to WHITE as "Sam" and affirmed WHITE'S moniker as being "Yam". SMART stated WHITE has long fingernails and had dreadlocks but has since cut them off. SMART stated WHITE was not living next door to him but was in a relationship with the female, referring to BUFORD, who lives next door to SMART.

27.     SA Ernst showed WHITE'S Wisconsin Driver's license photograph as well as a screenshot of a picture of WHITE taken from WHITE'S Facebook account and SMART positively identified them as being WHITE.

28.     Regarding purchasing the Glock pistol, SMART stated WHITE kept asking SMART to buy a firearm for WHITE. SMART stated WHITE knew SMART could buy firearms because WHITE had seen SMART in possession of Smith and Wesson pistol that SMART had previously purchased. SMART stated WHITE told SMART he could not purchase firearms and stated he looked out for SMART and saw SMART as a nephew. SMART stated WHITE never

14

told SMART why WHITE wanted the firearm. SMART stated he agreed to purchase the firearm for WHITE and sell it to WHITE for cheaper than SMART paid for the firearm.

29.    SMART stated WHITE asked for a Glock pistol and did not specify a model or caliber. SMART stated he purchased the Glock, Model 30, .45 caliber pistol because that was the only Glock pistol the FFL he went to had for sale. SMART stated he does not remember telling WHITE about the model or caliber of the pistol SMART purchased. SMART stated he paid in United States Currency (USC) for the Glock pistol.

30.    SMART confirmed what investigators knew through the toll analysis of SMART'S telephone number that WHITE was in fact in contact with SMART directly surrounding the dates SMART went to purchase the Glock pistol. SMART stated WHITE did contact SMART between initially going in to purchase the firearm and picking the firearm up to see when the firearm would be ready. Investigators asked SMART to look in his cellular telephone for any remaining conversations between him and WHITE, but SMART was unable to find any conversations.

31.    SMART stated when he picked up the Glock pistol from the FFL, he notified WHITE and was told by WHITE they meet up. Later that day, after it got dark outside, SMART stated WHITE told SMART where to meet. SMART stated he could not remember exactly where they met. SMART stated when he arrived at the meet location, WHITE came up to SMART'S vehicle, SMART exited his vehicle, handed WHITE the firearm in the gun box it came in and followed WHITE back to the vehicle WHITE had arrived in. SMART stated WHITE showed the firearm off to other individuals he was with and stated, "Good looking, this me." SMART stated a couple of people WHITE was with had positioned themselves behind SMART and one of the individuals put a firearm to SMART'S back. SMART stated after being robbed of the firearm, WHITE and his associates then left in their vehicle. SMART stated he was never paid by WHITE for the Glock pistol.

32.     In my training and experience, I have learned that AT&T is a company that provides cellular telephone access to the general public.  I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate information about the locations of the cellular telephones to which they provide service, including cell-site data, also known as "tower/face information" or "cell tower/sector records."  Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected.  These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas.  Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device.  Accordingly, cell-site data provides an approximate location of the cellular telephone but is typically less precise than other types of location information, such as E-911 Phase II data or Global Positioning Device ("GPS") data.

33.     Based on my training and experience, I know that AT&T can collect cell-site data about the SUBJECT PHONE.  I also know that wireless providers such as AT&T typically collect and retain cell-site data pertaining to cellular phones to which they provide service in their normal course of business in order to use this information for various business-related purposes.

34.     Based on my training and experience, I know that wireless providers such as AT&T typically collect and retain information about their subscribers in their normal course of business.  This information can include basic personal information about the subscriber, such as name and address, and the method(s) of payment (such as credit card account number) provided by the subscriber to pay for wireless telephone service.  I also know that wireless providers such as AT&T typically collect and retain information about their subscribers' use of the wireless service, such as records about calls or other communications sent or received by a particular phone

16

and other transactional records, in their normal course of business. In my training and experience, this information may constitute evidence of the crimes under investigation because the information can be used to identify the SUBJECT PHONE's user or users and may assist in the identification of co-conspirators and/or victims.

## AUTHORIZATION REQUEST

35.     Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to 18 U.S.C. § 2703(c) and Federal Rule of Criminal Procedure 41.

36.     I further request that the Court direct AT&T to disclose to the government any information described in Section I of Attachment B that is within its possession, custody, or control. Because the warrant will be served on AT&T who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

37.     I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation, including by giving targets an opportunity to destroy or tamper with evidence, change patterns of behavior, notify confederates, and flee from prosecution.

# ATTACHMENT A

## Property to Be Searched

This warrant applies to records and information associated with the cellular telephone assigned call number **(414) 242-1743,** WITH INTERNATIONAL MOBILE SUBSCRIBER IDENTITY / ELECTRONIC SERIAL NUMBER 310410285629749 ("the Account"), that are stored at premises controlled by **AT&T** ("the Provider"), headquartered at **11760 U.S Highway 1, North palm Beach, FL 33408.**

# ATTACHMENT B

## Particular Things to be Seized

## I.      Information to be Disclosed by the Provider

To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, including any information that has been deleted but is still available to the Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Provider is required to disclose to the government the following information pertaining to the Account listed in Attachment A for the time period **March 20, 2021, to September 30, 2021.**

a.  The following information about the customers or subscribers of the Account:

   i.  Names (including subscriber names, user names, and screen names);

   ii.  Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

   iii.  Local and long distance telephone connection records;

   iv.  Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

   v.  Length of service (including start date) and types of service utilized;

   vi.  Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

   vii.  Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address); and

   viii.  Means and source of payment for such service (including any credit card or bank account number) and billing records.

19

b. All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the Account, including:

    i. the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses); and

    ii. information regarding the cell tower and antenna face (also known as "sectors") through which the communications were sent and received.

## II.    Information to be Seized by the Government

All information described above in Section I that constitutes evidence of violations of Title 18, United States Code, Sections 922(g)(1) (felon in possession of a firearm); 922(d)(1) (providing a firearm to a felon), and 924(a)(6) (straw purchase of a firearm) involving SMART and others during the period of March 20, 2021, to September 30, 2021.

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Provider in order to locate the things particularly described in this Warrant.

20

## CERTIFICATE OF AUTHENTICITY OF DOMESTIC RECORDS PURSUANT TO FEDERAL RULES OF EVIDENCE 902(11) AND 902(13)

I, _____, attest, under penalties of perjury by the laws of the United States of America pursuant to 28 U.S.C. § 1746, that the information contained in this certification is true and correct. I am employed by AT&T, and my title is _____. I am qualified to authenticate the records attached hereto because I am familiar with how the records were created, managed, stored, and retrieved. I state that the records attached hereto are true duplicates of the original records in the custody of AT&T. The attached records consist of _____ **[GENERALLY DESCRIBE RECORDS (pages/CDs/megabytes)]**. I further state that:

a.        all records attached to this certificate were made at or near the time of the occurrence of the matter set forth by, or from information transmitted by, a person with knowledge of those matters, they were kept in the ordinary course of the regularly conducted business activity of AT&T, and they were made by AT&T as a regular practice; and

b.        such records were generated by AT&T electronic process or system that produces an accurate result, to wit:

1.        the records were copied from electronic device(s), storage medium(s), or file(s) in the custody of AT&T in a manner to ensure that they are true duplicates of the original records; and

2.        the process or system is regularly verified by AT&T, and at all times pertinent to the records certified here the process and system functioned properly and normally.

I further state that this certification is intended to satisfy Rules 902(11) and 902(13) of the Federal Rules of Evidence.

_____     _____
Date                                Signature